945 So.2d 890 (2006)
STATE of Louisiana, Appellee
v.
Chonita BROWHOW, Appellant.
No. 41,686-KA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
Rehearing Denied January 18, 2007.
*891 Louisiana Appellate Project, by Carey J. Ellis, III, for Appellant.
Jerry L. Jones, District Attorney, Fred Royce McGaha, Rosalind D. Jones, Assistant District Attorneys, for Appellee.
Before STEWART, DREW and SEXTON (Pro Tempore), JJ.
DREW, J.
Chonita Browhow was convicted by a jury of one count of attempted cruelty to the infirmed[1] and one count of simple battery. She was sentenced to five years' imprisonment at hard labor on the conviction for attempted cruelty to the infirm and six months' imprisonment on the conviction for simple battery. The court ordered the sentences to be served consecutively. The defendant appeals. We affirm.

*892 FACTS
On May 1, 2002, the defendant, Chonita Browhow, was indicted on one count of cruelty to the infirm for the alleged mistreatment or neglect of Theda Norris and another count of cruelty to the infirm for her mistreatment or neglect of Frances Cole. Both victims were residents at The Arbor House and Terrace, an assisted living facility in West Monroe, Louisiana. Starting in 1998 and until her discharge on January 14, 2002, the defendant was a personal care attendant at the facility and, more specifically, in the Alzheimer's unit of the facility. She worked four days on and three days off on the graveyard shift, which lasted from 11:00 p.m. until 7:00 a.m.
On or about December 24, 2001, Browhow and two other personal care attendants (Stephanie Riggins and Oniece Williams) were trying to dress Frances Cole, who suffered from Alzheimer's disease and was being uncooperative. In her attempts to resist, Cole struck the defendant. Williams and Riggins both testified that, in response, the defendant slapped Cole in the face. When Cole struck back, the defendant slapped her again. When Williams asked the defendant to stop slapping the patient, the defendant left the room.
A week later, on the night of either December 31, 2001, or January 1, 2002, Riggins again worked the graveyard shift with the defendant. According to Riggins, on this particular evening the defendant was caring for Theda Norris, an 81-year-old, non-ambulatory Alzheimer's patient. When Riggins first observed the defendant that evening, she was preparing to give Norris a shower. Sometime later, she observed the defendant standing by the facility's back door, which led to an open-air enclosure. Occupants of this enclosure were exposed to the elements but still securely within the facility. Riggins asked the defendant where Norris was and was told that she was outside. When Riggins asked why Norris was outside, the defendant responded that it was because she had been "acting a fool." Riggins proceeded with her duties and about 15 minutes later observed the defendant bringing Norris back inside. Riggins testified that Norris was in a wheelchair with her head down and her arms crossed in front of her and was wearing only flannel pajamas. Riggins testified that it was very cold on that particular evening. While none of the witnesses unequivocally testified that Norris was unable to walk, Riggins and the facility's administrator, Betty Grice, both testified that her condition would have prevented her from finding her way outside on her own or back inside on the evening in question.
Neil Shaw, a meteorologist, testified that the average ambient temperature between 10:00 p.m. on December 31, 2001, and 2:00 a.m. on January 1, 2002, was 29 degrees Fahrenheit. During the same time frame on the night of January 1, 2002, and early morning of January 2, 2002, the average ambient temperature was 32 degrees Fahrenheit.
After a one-day trial in January 2006, the jury returned a responsive verdict of attempted cruelty to Norris and a responsive verdict of simple battery of Cole. The trial court then ordered the preparation of a pre-sentence investigation report, and the defendant's sentencing was taken up on May 8, 2006.
At sentencing, the trial court noted that:
 it had reviewed the pre-sentence investigation report containing the defendant's social, educational, work, family, and criminal histories;
 it also considered the guidelines set forth in La. C. Cr. P. art. 894.1;

*893  the only applicable mitigating factor set forth therein was the defendant's lack of a prior criminal history;
 the defendant had two teenage sons residing with her at the time of sentencing;
 the defendant manifested deliberate cruelty to victims, whom the defendant knew to be particularly vulnerable due to their advanced age and infirmity;
 the defendant abused her position in that she violated the trust placed in her by the victims' families who looked to the defendant to care for their loved ones;
 the defendant was afforded an opportunity to make a statement for the pre-sentence investigation report but declined to do so; and
 the defendant was also afforded an opportunity to address the court at the sentencing hearing, but declined to do so.
Finding that the defendant was in need of correctional treatment, and that a lesser sentence would deprecate the seriousness of the crime, the trial court sentenced the defendant to serve five years' imprisonment at hard labor on the count of attempted cruelty to the infirm and six months' imprisonment on the count of simple battery, with the sentences to be served consecutively. After the trial court rejected the defendant's motion to reconsider the sentences, the defendant perfected this appeal, asserting two assignments of error.
Sufficiency of Evidence
The defendant argues that the evidence was insufficient to show that Theda Norris had experienced any pain or suffering as a result of being placed outside by the defendant. Without proof of any pain or suffering, the defendant contends that there is insufficient evidence to support the conviction for attempted cruelty to the infirm.
The state counters by pointing to the evidence of the ambient temperature of 29 degrees Fahrenheit on the evening that the defendant placed Norris outside in her wheelchair clothed only in her pajamas. It also contends that the testimony regarding Norris' appearance when she was brought back inside with her head down and arms crossed supports the conclusion that the defendant had inflicted suffering.
La. R.S. 14:93.3(A) provided at the time of the crime:
Cruelty to the infirmed is the intentional or criminally negligent mistreatment or neglect by any person, including a caregiver, whereby unjustifiable pain, malnourishment, or suffering is caused to the infirmed, a disabled adult, or an aged person, including but not limited to a person who is a resident of a nursing home, mental retardation facility, mental health facility, hospital, or other residential facility.
La. R.S. 14:27(A) provided at the time of the crime:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
"Unjustifiable," within the meaning of La R.S. 14:93.3, is a term of limitation intended to distinguish that pain and suffering which is an inevitable consequence of care and treatment from that which is not justified by medical needs. State v. Brenner, 486 So.2d 101 (La.1986).
A conviction of an attempted offense must rest upon sufficient proof that *894 the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. State v. Cheatham, 38,413 (La.App.2d Cir.6/23/04), 877 So.2d 164, writ denied, 2004-2224 (La.6/24/05), 904 So.2d 717. Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Knowles, 598 So.2d 430 (La.App. 2d Cir.1992). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982).
Our jurisprudence relative to review for sufficiency of the evidence is clear.[2]
In this case, the direct evidence presented, viewed in the light most favorable to the state, proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant attempted to violate La.R.S. 14:93.3(A). The evidence viewed under the aforementioned standard of review sufficiently proved the defendant intended to mistreat the victim, an aged person, by placing her outside in freezing temperatures, clothed in nothing more than pajamas, for a period of at least 15 minutes. It also is a reasonable inference that this conduct would have caused unjustifiable pain or suffering to the victim. However, whether or not such pain or suffering was actually proven is not relevant to whether the evidence supports a conviction for attempted cruelty to the infirm. The evidence need only be sufficient to prove that the defendant actively desired to cause the proscribed criminal consequences to follow her act or failure to act and that she committed or omitted an act for the purpose and tending directly toward the accomplishing of that object. The despicable actions of the defendant establish specific intent to mistreat the victim. Furthermore, it sufficiently establishes her intent to cause the proscribed pain or suffering to the victim, which pain or suffering would not have been an inevitable consequence of the victim's care and treatment.
*895 The evidence was more than sufficient to sustain the conviction.
Excessive Sentence
The defendant argues that:
 the trial court erred in failing to properly consider the mitigating factors regarding her lack of a criminal history and the hardship her incarceration would have on her children;
 the sentences are disproportionate to the crime in light of sentences imposed for similar convictions in other Louisiana cases;
 the sentences are not tailored to address her specific crime; and
 the trial court erred in failing to give specific reasons for running the sentences consecutively as required by law.
The state argues that the sentences are not excessive because:
 the helpless nature of the defendant's victims makes the conduct particularly despicable; and
 because the two convictions do not arise out of the same act or transaction or as part of a common scheme or plan, the trial court was well within its discretion in ordering the sentences to be served consecutively.
In December of 2001, La. R.S. 14:35 provided in pertinent part:
Whoever commits a simple battery shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
In January of 2002, La. R.S. 14:93.3(E) provided:
Whoever commits the crime of cruelty to the infirmed, disabled adults, or aged persons shall be fined not more than ten thousand dollars or imprisoned with or without hard labor for not more than ten years, or both.
La. R.S. 14:27 provided at that time:
D. Whoever attempts to commit any crime shall be punished as follows:
* * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
Our law on review for excessiveness of sentence is clear.[3]
*896 Prior to imposing sentence, the trial court thoroughly reviewed the pre-sentence investigation ("PSI") report. In doing so, the court noted that the defendant was a high school graduate with some years of college and that she had two teenage children who resided with her. The PSI report indicates that the children were 17 and 18 at the time the report was prepared. The trial court noted that the defendant had been afforded an opportunity to make a statement for the PSI report but declined to do so.
The court also stated the following conclusions:
 the victims were helpless elderly women who had been entrusted to the defendant's care by their families;
 the defendant "cruelly abused and [betrayed] that trust;"
 maximum sentences are only appropriate for the most serious violations;
 the defendant was in need of correctional treatment best provided by incarceration;
 any lesser sentences than those actually imposed would deprecate the seriousness of the offenses;
 maximum sentences should be imposed on each offense (though we note that no fines were imposed on the defendant); and
 these two sentences should be served consecutively.
In light of the seriousness of these crimes, the harm done to the victims and the lack of remorse shown by defendant, the sentences are not disproportionate to the severity of the offenses nor do they shock the sense of justice.
When consecutive sentences are imposed, the court "shall state the factors considered and its reasons for the consecutive terms." State v. Green, 614 So.2d 758, 760 (La.App. 2d Cir.1993). However, as this court has noted previously, the jurisprudence has moved away from requiring remand under certain circumstances when the trial court has imposed consecutive sentences without specifically stating reasons for the consecutive sentences. See State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, State ex rel. Hampton v. State, XXXX-XXXX (La.3/11/05), 896 So.2d 57, State ex rel. Hargrove v. State, 2004-2380 (La.6/03/05), 903 So.2d 452. The failure to articulate specific reasons for imposing consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Hampton, supra.
Where two offenses are separate and not viewed as a single course of conduct, it is within the discretion of the trial court to order that the terms of incarceration be served consecutively. State v. Robinson, 33,921 (La.App.2d Cir.11/1/00), 770 So.2d 868. The trial court did not abuse its great discretion regarding the length and consecutive nature of the sentences imposed.

DECREE
The defendant's convictions and sentences are AFFIRMED.
APPLICATION FOR REHEARING Before WILLIAMS, STEWART, CARAWAY, DREW and SEXTON, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] The statute, R.S. 14:93.3, designates the offense as "cruelty to the infirmed," an obvious typographical error for "infirm." See State v. Walker, 37,493 (La.App.2d Cir.8/20/03), 853 So.2d 746, fn. 1, writ recalled, 2003-2871 (La.7/2/04), 877 So.2d 99; Hal Odom Jr., "How Write You Are," 12 The Bar Review 15 (October 2003).
[2] The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.

The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
[3] A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.5/12/04), 873 So.2d 939.

The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating and mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Second, a sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.